IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Linda Green, as Personal Representative of the Estate of Nicolette Tanyja Eugenua French,<br><br>Plaintiff,<br><br>v.<br><br>Horry County, Horry County Sheriff's Office, Sheriff Phillip Thompson in his individual capacity, Elizabeth Orlando in her individual capacity, Stephen W. Flood in his individual capacity, and Joshua D. Bishop in his individual capacity,<br><br>Defendants. | CIVIL ACTION NO.:<br><br><br>**COMPLAINT**<br>42 U.S.C. § 1983<br>(Wrongful Death)<br>(Survival Action)<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This is an action for money damages under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, and under the South Carolina Tort Claims Act and state common law, against Horry County, the Horry County Sheriff's Office, Elizabeth Orlando, Sheriff Phillip Thompson, Stephen W. Flood, and Joshua D. Bishop.

2. These claims arise from the death of Nicolette Tanyja Eugenua French. Mrs. French was a mental health patient subject to an involuntary commitment order. Mrs. French died by drowning after Defendants Flood and Bishop, agents and employees of the Horry County Sheriff's Office, locked Mrs. French in an unsafe caged compartment of a transport vehicle and drove the vehicle around a barricade and into rising flood waters.

3. Defendant Horry County owned and maintained the vehicle in which Mrs. French drowned. Defendant Horry County furnished the vehicle to the Defendant Horry County Sheriff's Office ("HCSO") for the exclusive purpose of transporting persons in state

custody. Defendant Horry County modified the configuration of the vehicle by installing a caged compartment with only one exit door and one path of escape. Defendant Horry County's modifications removed access to a second point of egress that was part of the manufacturer's original design of the vehicle.

4. Horry County Sheriff Thompson and HCSO Transportation Division Supervisor Orlando supervised the transport of persons in state custody by HCSO deputies. Defendants Thompson and Orlando knew or should have known that the vehicle's modified configuration prevented access to a second exit, left custodial passengers with only one path of escape, and posed a pervasive and unreasonable risk of harm to every custodial passenger. Despite this obvious danger, Defendants Thompson and Orlando failed to train their subordinates on emergency evacuation and failed to enact any policy regarding emergency evacuation practices or use of the vehicle in dangerous conditions.

5. Defendants Flood and Bishop, HCSO deputies assigned to transport Mrs. French to a commitment facility, ignored multiple warnings that certain roads were flooded and dangerous. Hoping to avoid a longer route, Defendants Flood and Bishop drove the vehicle through miles of rising flood water. Eventually, the vehicle became stuck and water rendered the caged compartment's single exit door inoperable. Mrs. French was trapped inside as water filled and submerged the vehicle, proximately resulting in her horrific death by drowning.

6. Mrs. French's drowning would not have occurred but for the deliberate indifference of Defendant Horry County to the safety of the passengers for whose transport the County purchased, maintained and modified the vehicle. Defendant Horry County's modifications deprived Mrs. French of access to an otherwise easily available alternative exit point.

Defendant Horry County's modifications rise above mere negligence as they required affirmative acts to order, install and maintain these modifications. Defendant Horry County's modifications created an inherent danger to any passenger placed inside the vehicle for transport. Defendant Horry County undertook these modifications with knowledge that the vehicle's only purpose was the transport of passengers in state custody, whose ability to aid themselves in an emergency would necessarily be restricted. Further, Defendant Horry County failed to offer or require any training on evacuation of passengers from the caged compartment, though the need for such training was obvious and the failure to require such training placed all custodial passengers at substantial risk of serious harm. Defendant Horry County also failed to enact any policy governing the transport of passengers in dangerous weather or driving conditions, where the risk to passengers restrained in the caged compartments was even greater.

7. Mrs. French's drowning would not have occurred but for the deliberate indifference of Defendants Bishop and Flood, who recklessly drove the vehicle into dangerous flooding conditions without justification and in conscious disregard for the safety of Mrs. French, whose freedom the state had restrained and whose care and safety the Defendants were charged with protecting.

8. Mrs. French's drowning would not have occurred but for the deliberate indifference of Defendants Thompson and Orlando to the pervasive and unreasonable risk presented by the vehicle's modified configuration. The failure to provide or require training programs on emergency evacuation of custodial passengers confined in the vehicle's caged compartment, or to enact policies or procedures to address the obvious dangers posed by

3

the vehicle's restrictions on passenger egress, amounts to a failure to supervise and manifests deliberate indifference.

9. As a direct result of the affirmative acts and deliberate indifference of Defendants, Mrs. French endured great conscious pain and suffering and a horrific death.

## JURISDICTION AND VENUE

10. This action arises under the Constitution and laws of the United States. This Court has original jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

11. This action also arises under the laws of South Carolina, including the South Carolina Tort Claims Act, SC Code § 15-78-10 et seq. and common law claims for wrongful death and survival under S.C. Code §§ 15-5-90 and 15-51-10 et seq. This Court has pendent jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

12. All material events giving rise to these causes of action occurred in Horry or Marion Counties, South Carolina. Upon information and belief, each Defendant resides in Horry County, South Carolina. Under 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the District of South Carolina.

## PARTIES

13. Plaintiff Linda Green is the duly appointed Personal Representative of the Estate of Nicolette Tanyja Eugenua French ("Plaintiff") pursuant to an order of the Horry County Probate Court and brings these actions on behalf of Mrs. French's estate, her heirs at law, and her statutory beneficiaries.

14. Defendant Horry County ("Horry County") is a municipal entity organized under the laws of the State of South Carolina.

15. Defendant Horry County Sheriff's Office ("HCSO") is a law enforcement agency organized under the laws of the State of South Carolina.

16. Defendant Sheriff Phillip Thompson ("Sheriff Thompson"), at all relevant times herein, was the Horry County Sheriff and, as such, administrator of a law enforcement agency organized under the laws of the State of South Carolina. Upon information and belief, Sheriff Thompson is a citizen and resident of Horry County. Sheriff Thompson is sued in his individual capacity.

17. Defendant HCSO Sergeant Elizabeth Orlando ("Defendant Orlando"), at all times relevant herein, was the head of the transportation department at the J. Reuben Long Detention Center in Horry County. Upon information and belief, Defendant Orlando is a citizen and resident of Horry County. Defendant Orlando is sued in her individual capacity.

18. Defendant Stephen Flood ("Defendant Flood"), at all times relevant herein, was a Lance Corporal officer with the HCSO acting under color of state law and within the course and scope of employment. Upon information and belief, Defendant Flood is a citizen and resident of Horry County. Defendant Flood is sued in his individual capacity.

19. Defendant Joshua Bishop ("Defendant Bishop"), at all times relevant herein, was a Lance Corporal officer with the HCSO acting under color of state law and within the course and scope of employment. Upon information and belief, Defendant Bishop is a citizen and resident of Horry County. Defendant Bishop is sued in his individual capacity.

## **FACTS**

20. Mrs. French suffered from schizophrenia throughout her adult life. On or about July 16, 2018, she sought treatment for her mental health condition from Waccamaw Center for Mental Health (WCMH) in Conway, South Carolina. During that visit, she enrolled in a

5

twelve-week "care coordination" program that required biweekly counseling sessions at WCMH.

21. On the morning of September 18, 2018 Mrs. French attended a previously scheduled counseling appointment at WCMH.  During that appointment, Mrs. French reported hallucinations and suicidal ideations to a counselor. Based on her statements and a doctor's assessment, Mrs. French was placed on involuntary commitment orders pursuant to S.C. Code § 44-17-410. WCMH staff arranged for Mrs. French to be committed to McLeod Behavior Health Services in Darlington, South Carolina, more than sixty miles from the WCMH campus.

22. Once subject to involuntary commitment orders, Mrs. French became wholly dependent on the state to provide for her bodily safety and medical care.

23. WCMH staff contacted the HCSO Transportation Division to request transportation for Mrs. French to McLeod Behavior Health Services.

24. The HCSO Transportation Division regularly transported noncriminal, nonviolent mental health patients subject to commitment orders.

25. Upon information and belief, HCSO deputies regularly restrained noncriminal, nonviolent mental health patients subject to involuntary commitment by confining them to a small caged compartment inside a transport vehicle without prior determination by a medical professional as to the necessity, reasonableness or extent of such restraint.

26. Upon information and belief, the HCSO Transportation Division regularly transported such patients in a 2016 Ford Transit cargo van ("the vehicle") that was furnished by Defendant Horry County for the exclusive purpose of transporting persons in state custody, including inmates and involuntarily committed persons such as Mrs. French.

6

27. Defendant Horry County provided the vehicle to Defendant HCSO according to the terms of the "Horry County Fleet Policy" under which the County held and maintained authority over the use, assignment and operation of the vehicle. Upon information and belief, the Horry County Fleet Policy stated that the HCSO may not approve any policy that conflicted or contradicted the provisions of the Horry County Fleet Policy. Defendant Horry County owned the vehicle, titled the vehicle in its own name, and performed all modifications, maintenance and repairs to the vehicle. Defendant Horry County required the HCSO to provide detailed information about each use of the vehicle down to the exact mileage of every trip.

28. Defendant Horry County purchased the vehicle in June 2016. At the time of purchase, the interior of the vehicle was comprised of a front compartment with a driver and passenger seat and a rear cargo section. The rear cargo section could be accessed by two barn-style doors at the rear of the vehicle and a sliding door on the passenger side.

29. In or around January 2017, Defendant Horry County undertook a series of modifications to the vehicle's interior configuration that, upon information and belief, were not authorized by the manufacturer. These modifications included the installation of a two-compartment cage module into the rear cargo section of the vehicle. Upon information and belief, Defendant Horry County removed a cage module that had been designed for and installed into another vehicle that Horry County had previously retired. Because the older vehicle from which Defendant Horry County removed the module and the new Ford Transit vehicle in which Defendant Horry County sought to install the module were different models of vehicles designed with different dimensions and specifications, the module would not fit inside the Ford Transit. Upon information and belief, defendant Horry County

modified both the old cage module and the new Ford Transit vehicle in order to force fit the module into a newer vehicle with a different design. Upon information and belief, the modifications were performed by Defendant Horry County employees at the Horry County garage and required between forty and fifty labor hours.

30. Defendant Horry County's modifications to the vehicle blocked access to a second exit and left passengers confined in the caged compartments with only one available point of egress in the event of an emergency.

31. Upon information and belief, Horry County modified the vehicle and installed the caged compartments for the express purpose of transporting persons in state custody.

32. Upon information and belief, Defendant Horry County maintained a custom and practice of modifying vehicles for the transport of persons in state custody in a manner that limited access to otherwise accessible exits by persons confined in the modified vehicles.

33. Defendant Horry County modified and maintained the vehicle with actual knowledge that patients subject to orders of involuntary commitment regularly endured lengthy trips of several hours inside the small caged compartment with only one available exit. Upon information and belief, Defendant Horry County failed to enact any policy governing the restraint of mental health patients in the vehicle or caged compartments or to otherwise ensure that County equipment was not used to impose unnecessary and undue restraint on nonviolent, noncriminal mental health patients transported in the vehicle.

34. Upon information and belief, Defendant Horry County authorized the restraint of mental health patients subject to involuntary commitment orders in the vehicle's caged compartments without a requirement that a medical professional first determine that such bodily restraint was necessary.

35. Upon information and belief, Defendant Horry County did not offer or require any training on evacuation of passengers from the vehicle despite the obvious danger presented by the confinement of passengers in caged compartments during transport. Defendant Horry County failed to enact any policy governing the use of the vehicle in dangerous conditions, including flooded roads, despite the danger posed by use of the vehicle in such conditions to passengers confined in the caged compartment with only one available exit.

36. Defendant Thompson was the Sheriff of Horry County and Defendant Orlando was the supervisor of the HCSO Transportation Division. Defendants Thompson and Orlando supervised the transportation of persons in state custody, including mental health patients under commitment orders, by HCSO deputies. Defendants Thompson and Orlando had an obligation to supervise and train HCSO employees as necessary to ensure that HCSO deputies provided safe transport to persons in state custody and that HCSO deputies do not violate the constitutional rights of such passengers. Defendants Thompson and Orlando had a duty to enact policies and procedures to ensure the safe transportation of persons in state custody where, as here, the need for such policies and procedures was obvious and the lack of any established policies and procedures posed a substantial risk of harm to persons in state custody. Defendants Thompson and Orlando had a duty to supervise subordinates to ensure that deputies tasked with transporting mental health patients did not impose unnecessary or undue bodily restraint or confinement on mental health patients.

37. Upon information and belief, despite knowledge that all passengers restrained in the caged compartment were at risk of becoming trapped during an emergency because they lacked a second path of escape, Defendants Thompson and Orlando:

    a.   Failed to train HCSO deputies on emergency evacuation of passengers from the modified vehicle;

    b.   Failed to train or supervise HCSO deputies to ensure that deputies avoided road conditions that posed additional and unnecessary risks to passengers confined in the caged compartment;

    c.   Failed to enact any policy or procedure governing emergency evacuation of the vehicle or use of the vehicle in inclement weather or dangerous road conditions that posed an additional risk to passenger safety.

38. Upon information and belief, Defendants Thompson and Orlando failed to enact any policy or procedure to ensure and maintain access to a key that unlocked a metal grate inside the vehicle. When unlocked, the grate was designed to open, thus allowing persons confined in the caged compartment access to a second exit. Upon information and belief, the location of the key was unknown at the time Mrs. French was placed in the vehicle.

39. Upon information and belief, Defendant's Thompson and Orlando failed to enact any supervisory mechanism by which to ensure that mental health patients in the custody of the HCSO transport department were free from unnecessary or undue restraint during transport.

40. At the time that Mrs. French was committed, certain areas of the state of South Carolina were experiencing flooding in the aftermath of rainfall that accompanied Hurricane Matthew, which occurred several days prior.

41. There were no mandatory medical evacuations applicable to Horry County and flooding posed no risk to the WCMH facility where Mrs. French was placed under commitment.

However, flood waters threatened other areas of Horry and Marion Counties along the most direct route to McLeod Behavioral Health Services.

42. Upon information and belief, at approximately 2:50 p.m., Officer Wright of the HCSO Transportation Division arrived at WCMH and placed Mrs. French in the smaller of the two caged compartments in the vehicle. Mrs. French was transferred to the J. Reuben Long Detention Center (JRLDC).

43. Defendant Orlando assigned Defendants Flood and Bishop to transfer Mrs. French from JRLDC to McLeod Behavior Health Services and to transfer a second woman under involuntary commitment orders, Wendy Newton, from Seacoast Hospital in Loris, South Carolina to Rebound Health Services in Lancaster, South Carolina.

44. Upon information and belief, neither officer Wright nor Defendants Flood and Bishop took possession of the documents effecting the commitment of Mrs. French.

45. Upon information and belief, defendants Flood and Bishop were warned of dangerous road conditions on the most direct route and advised that a longer alternative route should be taken. Upon information and belief, Defendants Flood and Bishop were specifically informed that Highway 9 was closed or impassable and that the town of Nichols, South Carolina was experiencing heavy flooding.

46. Upon information and belief, at approximately 5:00 p.m., with Mrs. French confined in the smaller of two caged compartments in the rear of the vehicle, Defendants Flood and Bishop drove the van to McLeod Loris Hospital in Loris, South Carolina to retrieve Wendy Newton.  Defendants Flood and Bishop confined Ms. Newton alongside Mrs. French in the small caged compartment.

47. Despite knowledge of the flooding on Highway 9 and in the town of Nichols, and previous warnings to avoid that route, Defendants Flood and Bishop proceeded with deliberate indifference to the safety of Mrs. French toward Highway 9 and the town of Nichols.

48. Upon information and belief, outside the town of Nichols, Defendants Flood and Bishop encountered a barricade manned by a National Guard Military Police Officer. The Guardsman warned Defendants that flood waters were rising, roads were not passable and the town of Nichols was being evacuated. Nevertheless, Defendants Flood and Bishop continued on the same route.

49. Upon information and belief, less than a mile after proceeding past the manned barricade, Defendants Flood and Bishop encountered flooding. Nevertheless, Defendants Floor and Bishop continued in the direction of the cresting Pee Dee River with deliberate indifference to the safety of Mrs. French.

50. Upon information and belief, Defendants Flood and Bishop drove the vehicle through flooded roads for approximately two miles with deliberate indifference to the safety of Mrs. French.

51. As Defendants Flood and Bishop proceeded toward a bridge that crossed the cresting Pee Dee River, strong currents pushed the vehicle against a guard rail and the vehicle became stuck. Defendants Flood and Bishop both escaped the vehicle. However, neither were able to open the side door of the vehicle, the single point of egress, to reach the small caged compartment where they had confined Mrs. French and Ms. Newton.

52. Upon information and belief, at approximately 5:49 p.m., Defendant Bishop communicated by radio to JRLDC that the vehicle was stuck in water and that two passengers were trapped inside.

53. For approximately one hour, Mrs. French and Ms. Newton remained trapped as water steadily rose to the top of their small, caged compartment, causing them conscious pain and suffering, great emotional distress and ultimately death by drowning.

54. Plaintiff demands a trial by jury.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Duty to Protect Persons in State Custody)**
**(Wrongful Death and Survival)**
**Against Defendants Steven Flood and Joshua Bishop in their individual capacities**

55. Each and every allegation contained in this Complaint which is not inconsistent with this cause of action is incorporated by reference as if repeated verbatim herein.

56. At all relevant times, Defendants Flood and Bishop were persons acting under the color of state law and are sued in their individual capacities for violating Mrs. French's constitutional rights under the Fourteenth Amendment to the United States Constitution.

57. At the time of the incidents at issue, Mrs. French had clearly established rights under the United States Constitution:

   a.   To be free from deliberate indifference to a substantial risk of serious harm;

   b.   To be free from state created danger;

   c.   To bodily integrity;

   d.   To personal security;

   e.   To be free from unnecessary bodily restraint; and

   f.   To reasonably safe conditions of confinement.

58. Defendants Flood and Bishop violated these clearly established rights in the ways described in summary form herein, and in ways that will be uncovered in discovery and at trial.

13

59. Defendants Flood and Bishop had a special relationship with and duty to protect Mrs. French because she was in state custody by virtue of her involuntary commitment, and Defendants Flood and Bishop were assigned to transport her to a commitment facility.

60. Defendants Flood and Bishop had a special relationship with and duty to protect Mrs. French because Defendants, under color of state law, confined her in a locked caged compartment in which her liberty and ability to act on her own behalf were restrained.

61. As state officers charged with the responsibility of transporting an involuntarily committed mental patient, Defendants Flood and Bishop owed Mrs. French an affirmative duty to provide for her safety and medical needs and transport her in a safe and constitutional manner.

62. Defendants Flood and Bishop breached this duty by:

   a. Restraining Mrs. French inside a small caged compartment without a prior determination by a medical professional that such restraint was reasonable or necessary;

   b. Knowingly, deliberately, recklessly and consciously failing to follow local evacuation orders and the warnings of the National Guard;

   c. Driving the vehicle around a barricade to access roads known to be dangerously flooded;

   d. Continuing to drive on flooded roads for approximately two miles while transporting Mrs. French in the vehicle in a locked, caged compartment with only one point of egress.

63. The unconstitutional misconduct described herein was objectively unreasonable and deliberately indifferent to the rights of Mrs. French.

14

64. As a direct and proximate result of the above constitutional violations, Mrs. French suffered conscious pain and suffering, great emotional distress and a violent death.

65. Mrs. French's heirs at law and statutory beneficiaries have suffered and continued to suffer the loss of Mrs. French's life, love and support, mental anguish, grief, shock, sorrow, emotional distress, loss of Mrs. French's financial support, and incurred funeral expenses.

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 – State Created Danger)**
**(Wrongful Death and Survival)**
**Against Defendant Horry County**

66. Each and every allegation contained in this Complaint which is not inconsistent with this cause of action is incorporated by reference as if repeated verbatim herein.

67. At all relevant times, Defendant Horry County was a municipal body acting under the color of state law and is sued for violating Mrs. French's constitutional rights under the Fourteenth Amendment to the United States Constitution.

68. At the time of the incidents at issue, Mrs. French had clearly established rights under the United States Constitution:

    a.  To be free from deliberate indifference to a substantial risk of serious harm;

    b.  To be free from state created danger;

    c.  To bodily integrity;

    d.  To personal security;

    e.  To be free from unnecessary bodily restraint; and

    f.  To reasonably safe conditions of confinement.

69. Defendant Horry County violated these clearly established rights in the ways described in summary form herein, and in ways that will be uncovered in discovery and at trial.

70. Defendant Horry County's affirmative actions in modifying the vehicle created the inherent risk that a person confined inside the vehicle could be trapped in the event of an emergency. Defendant Horry County modified the vehicle with knowledge that the vehicle's exclusive purpose was the transport of persons in state custody, and that any person placed in the vehicle would, by virtue of their custodial status, depend on the state for protection.

71. Under circumstances such as these, where it was known by Defendant Horry County that each and every passenger placed in the vehicle would be restrained – due either to institutionalization or incarceration – and that its modifications had the direct effect of preventing access to a second point of egress, Defendant Horry County had a duty to protect those passengers from the danger of becoming trapped inside the vehicle. Defendant Horry County owned, controlled and held sole authority to modify the configuration of the vehicle and therefore had a duty to do so in a way that did not create or increase a danger to passengers confined inside.

72. The unconstitutional misconduct described herein was objectively unreasonable and demonstrates deliberate indifference to the rights of Mrs. French.

73. As a direct and proximate result of the above constitutional violations, Mrs. French suffered conscious pain and suffering, great emotional distress and a violent death.

74. Mrs. French's heirs at law and statutory beneficiaries have suffered and continued to suffer the loss of Mrs. French's life, love and support, mental anguish, grief, shock, sorrow, emotional distress, loss of Mrs. French's financial support, and incurred funeral expenses.

**THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1983 – *Monell* Claim)**
**(Wrongful Death and Survival)**
**Against Defendant Horry County**

75. Each and every allegation contained in this Complaint which is not inconsistent with this cause of action is incorporated by reference as if repeated verbatim herein.

76. At all relevant times, Defendant Horry County was a municipal body acting under the color of state law and is sued for violating Mrs. French's constitutional rights under the Fourteenth Amendment to the United States Constitution.

77. At the time of the incidents at issue, Mrs. French had clearly established rights under the United States Constitution:

   a.   To be free from deliberate indifference to a substantial risk of serious harm;

   b.   To be free from state created danger;

   c.   To bodily integrity;

   d.   To personal security;

   e.   To be free from unnecessary bodily restraint; and

   f.   To reasonably safe conditions of confinement.

78. Defendant Horry County violated these clearly established rights in the ways described in summary form herein, and in ways that will be uncovered in discovery and at trial.

79. Upon information and belief, Defendant Horry County maintained a custom and practice of modifying vehicles used for the transport of persons in state custody, including involuntarily committed mental health patients, in a manner that limited access to otherwise available exits in the event of an emergency. Defendant Horry County's custom and practice manifests deliberate indifference to the safety of Mrs. French and constitutes a moving force in the drowning of Mrs. French.

80. Upon information and belief, Defendant Horry County failed to offer or require any training or instruction regarding emergency evacuation from the modified vehicle despite

the obvious burdens on escape imposed by Defendant Horry County's own modifications. The failure to offer or require any training despite the obvious need demonstrates a gross disregard for the rights of persons confined in the vehicle and a deliberate indifference to their safety.

81. Upon information and belief, Defendant Horry County failed to enact any policy or procedure to ensure and maintain access to a key that was necessary to unlock a metal grate in the vehicle's caged compartment. The grate, which Horry County installed into the vehicle and secured with two padlocks, stood between the area where Mrs. French was confined and the exit doors at the rear of the vehicle. Had Horry County enacted and maintained a policy to ensure that deputies operating the vehicle had access to the key, Defendants Flood and Bishop would have had access to the key and would have been able to unlock the metal grate. Horry County's failure to enact such a policy demonstrates a gross disregard for the rights of persons confined in the vehicle and a deliberate indifference to their safety.

82. Upon information and belief, it was the custom and practice of Horry County to authorize the use of the vehicle's caged compartments to restrain noncriminal, nonviolent mental health patients without regard to the appropriate degree of restraint or confinement, without the advice of a qualified medical professional, and without regard for the safety of those passengers.

83. The unconstitutional misconduct described herein was objectively unreasonable and deliberately indifferent to the rights of Mrs. French.

84. As a direct and proximate result of the above constitutional violations, Mrs. French suffered conscious pain and suffering, great emotional distress and a violent death.

85. Mrs. French's heirs at law and statutory beneficiaries have suffered and continued to suffer the loss of Mrs. French's life, love and support, mental anguish, grief, shock, sorrow, emotional distress, loss of Mrs. French's financial support, and incurred funeral expenses.

**FOURTH CAUSE OF ACTION**
**(42 U.S.C. § 1983 – Supervisory Liability)**
**(Wrongful Death and Survival)**
**Against Defendants Phillip Thompson and Elizabeth Orlando in their individual**
**capacities**

86. Each and every allegation contained in this Complaint which is not inconsistent with this cause of action is incorporated by reference as if repeated verbatim herein.

87. At all relevant times, Defendants Thompson and Oralndo were persons acting under the color of state law and are sued in their individual capacities for violating Mrs. French's constitutional rights under the Fourteenth Amendment to the United States Constitution.

88. At the time of the incidents at issue, Mrs. French had clearly established rights under the United States Constitution:

    a.  To be free from deliberate indifference to a substantial risk of serious harm;

    b.  To be free from state created danger;

    c.  To bodily integrity;

    d.  To personal security;

    e.  To be free from unnecessary bodily restraint; and

    f.  To reasonably safe conditions of confinement.

89. Defendants Thompson and Orlando failed to train HCSO employees under their supervision, including defendants Flood and Bishop, on evacuation procedures for passengers confined inside the vehicle. Defendants Thompson and Orlando also failed to enact policies or procedures necessary to ensure the safe evacuation of custodial

passengers. In light of the limitations placed on passengers' ability to exit the vehicle in the event of an emergency, the need for such training, policies and procedures was obvious. The inadequacy of the response by Defendants Thompson and Orlando to the obvious lack and need for training, policies and procedures manifests deliberate indifference to a substantial risk of serious harm to all persons confined in the vehicle, including Mrs. French.

90. Defendants Thompson and Orlando failed to adequately supervise HCSO deputies to ensure that the restraint and confinement of mental health patients by deputies was reasonable in the judgment of a medical professional.

91. The unconstitutional misconduct described herein was objectively unreasonable and deliberately indifferent to the rights of Mrs. French.

92. As a direct and proximate result of the above constitutional violations, Mrs. French suffered conscious pain and suffering, great emotional distress and a violent death.

93. Mrs. French's heirs at law and statutory beneficiaries have suffered and continued to suffer the loss of Mrs. French's life, love and support, mental anguish, grief, shock, sorrow, emotional distress, loss of Mrs. French's financial support, and incurred funeral expenses.

**FIFTH CAUSE OF ACTION**
**<u>Negligence and Gross Negligence as to All Defendants</u>**
**(South Carolina Tort Claims Act)**
**(Survival and Wrongful Death)**
**Against Defendants Horry County and the Horry County Sheriff's Office**

94. Each and every allegation contained in this Complaint which is not inconsistent with this cause of action is incorporated by reference as if repeated verbatim herein.

95. Defendants undertook to transport Mrs. French and owed her a duty to provide safe and constitutional transportation.

96. Defendants intentionally and consciously failed to do what was incumbent upon them to do in transporting Mrs. French and intentionally acted as they ought not to in violating her constitutional rights and willfully and wantonly disregarding her safety. Defendants failed to exercise the care necessary under the circumstances.

97. Defendants breached their duties by the negligent and grossly negligent conduct described herein.

98. As a direct and proximate result of the negligent, grossly negligent, willful and wanton conduct of Defendants, Plaintiff suffered the injuries and damages described herein, including the following:

   a. Mrs. French's conscious physical pain and suffering, mental anguish, emotional trauma and suffering and wrongful death;

   b. Mrs. French's heirs at law and statutory beneficiaries have suffered grief, shock sorrow, loss of companionship, loss of Mrs. French's financial support, funeral expenses and wounded feelings, and all damages described herein.

## **PRAYER**

99. WHEREFORE, Plaintiff prays that the Court enter judgment against the Defendants, jointly and severally as follows:

   a. Actual and consequential damages in an appropriate amount;

   b. Punitive damages in an appropriate amount pursuant to 42 U.S.C. § 1983;

   c. Attorneys' fees and costs, including those recoverable under 42 U.S.C. § 1988; and

   d. Such further relief as the Court deems just and proper.

**PIERCE SLOAN WILSON**

21

**KENNEDY & EARLY LLC**
321 East Bay Street
Post Office Box 22437
Charleston, SC 29401
(843) 722-7733

*s/ Carl E. Pierce, II*
Carl E. Pierce, II (Fed ID 3062)
Benjamin C. Smoot, II (Fed ID 11801)
Robert Richard Gergel (Fed ID 13170)

L. Morgan Martin (Fed ID 1057)
Mary Ashley Martin (Fed ID 10583)
1121 Third Avenue
Conway, SC 29526
(843) 248-3177
**Law Offices of L. Morgan Martin, P.A.**

Luke A. Rankin (Fed ID 5165)
201 Beaty Street
Conway, SC 29528
(843) 248-2405
**Rankin & Rankin, P.A.**

G. Scott Bellamy (Fed ID 6309)
1206 Third Avenue, Ste. A
Conway, SC 29526
(843) 248-3173
**G. Scott Bellamy, P.C., Attorney at Law**

*Attorneys for Plaintiff*

December 12, 2019
Charleston, South Carolina